[No. 6653. Decided February 18, 1907.]

THE STATE OF WASHINGTON, *Appellant*, v. OLIVER T.
ERICKSON, *Respondent*.[1]

MASTER AND SERVANT—STATUTORY REGULATION—FACTORY ACT—
FEES FOR INSPECTION—CRIMINAL PROSECUTION—STATUTES—CONSTRUC-
TION. Under the factory act (Laws 1905, p. 164), which first pro-
vides for the safeguarding of dangerous machinery, and requires the
commissioner of labor to examine all factories to which the act
is applicable "as hereinafter provided," the words "as hereinafter
provided" restrict the duty of the commissioner with respect to
examining factories to the cases provided in the next sections of the
act, viz., where a request for inspection is made by employer or
employee; and section 11 of the act, making it a misdemeanor punish-
able by fine for any person to violate or fail to comply with any of
the provisions of the act, refers to the failure to employ the pre-
scribed safeguards, and not to the optional provisions providing for
an inspection and a certificate of approval which shall be *prima facie*
evidence of. compliance with the statute; hence it is not a violation
of the act to refuse to pay the fee of $10 for an inspection, and to
fail to keep a copy of the certificate posted in a conspicuous place as
provided in the act, where an inspection was made by the commis-
sioner on his own initiative without any request for such inspection
or certificate.

Appeal from a judgment of the superior court for King
county, Fra/ter, J., entered January 14, 1907, in favor of
the defendant, upon sustaining a demurrer to the complaint,
dismissing a prosecution for violation of the factory act.
Affirmed.

*The Attorney General*, and *J. B. Alexander* and *A. J.
Falknor, Assistants*, for appellant.

*Peters & Powell*, for respondent.

CROW, J.—The defendant, Oliver T. Erickson, was arrested
in pursuance of a complaint filed with John B. Gordon, a

1Reported in 88 Pac. 840.

justice of the peace in and for Seattle precinct, King county, which complaint, omitting formal parts, reads as follows:

"C. F. Hubbard, State Labor Commissioner, being first duly sworn on oath says: That at Seattle in said King county, state of Washington, on the 8th day of June, 1906, Oliver T. Erickson did commit the crime of failing to keep posted a certificate of the Commissioner of Labor showing a compliance with the act of March 6, 1905, Laws of Washington, 1905, chapter 84. Then and there being said Oliver T. Erickson being the owner and manager of a workshop where machinery is used to which the provisions of said act are applicable, did then and there wilfully and unlawfully after said workshop had been examined without request from said Erickson by the commissioner of labor of the state of Washington, and the machinery therein found to conform, in the judgment of said commissioner, to the requirements of said act, refuse to pay to the treasurer of the state of Washington a fee of ten dollars, refuse to obtain a receipt for such sum from the state treasurer, refuse to present such receipt to the commissioner of labor, and refuse to obtain a certificate from the commissioner of labor, and refuse to keep posted a copy of such certificate in a conspicuous place on every floor of such workshop, and refuse to post a copy of such certificate anywhere, contrary to the form of the statute," etc.

Having been arraigned, adjudged guilty, and fined, the defendant appealed to the superior court, where he interposed a demurrer to the complaint. The trial court having sustained the demurrer and discharged the defendant, the state has appealed.

The appellant contends that the trial court erred in sustaining the demurrer and discharging the respondent, and insists that, under the provisions of chapter 84, Laws 1905, page 164, commonly known as the "factory act," the demurrer should have been overruled. From the complaint it affirmatively appears that the commissioner of labor had examined respondent's workshop without any request from him, and had found that his machinery conformed to the

requirements of the act. The purpose of this prosecution seems to have been to hold respondent for his failure, (1) to pay a fee of $10 to the state treasurer; (2) to present a receipt therefor to the commissioner of labor, and obtain his certificate; and (3) to post a copy of such certificate in his workshop. Respondent does not contend that he would have been relieved from liability for the payment of such fee had an examination or inspection of his workshop been requested by himself or by one of his employees, as contemplated by §§ 5 and 6 of this act, but he does contend that if the commissioner of labor, upon his own initiative, makes an examination without such request, the respondent is not liable for the payment of the fee, nor is he required to obtain and post a certificate of inspection. He was sustained in this contention by the superior court, and we think that in so ruling the learned trial judge correctly interpreted the act.

The appellant insists that, by the express command of the statute, it is made the imperative duty of the commissioner of labor to annually examine all factories and workshops in the state. This interpretation might possibly be placed upon § 5 if examined alone, but the entire act is not susceptible of any such construction. This statute was enacted for beneficial purposes. It seeks to protect employees in factories from unnecessary danger. In the interests of humanity it imposes conditions tending to promote the health, welfare and safety of the working classes. This it does by the requirements of §§ 1, 2 and 3, making it the duty of owners and operators to see that proper safeguards are provided. It is conceded that the respondent has complied with all of these requirements. At his election he might have requested an examination of his workshop by the commissioner of labor, and have secured a certificate which would have been *prima facie* evidence of his compliance with the provisions of the act, but he has not seen fit to do so. We do not understand that, in the absence of such a request by

himself or one of his employees, it became the imperative duty of the commissioner of labor to inspect his workshop and thereby compel him to pay a fee and obtain a certificate. Section 4 reads as follows:

"It shall be the duty of the commissioner of labor . . . to examine . . . all factories . . . to which the provisions of this act are applicable for the purpose of determining whether they do conform to such provisions, and of granting or refusing certificates of approval, *as hereinafter provided.*"

The words "as hereinafter provided" place a limitation upon his duty "to examine . . all factories." The act not only sought to safeguard machinery, but was also intended to afford an opportunity to both employer and employee to secure an examination by the commissioner of labor when desired for their protection, and we interpret the words "as hereinafter provided" as referring to the provisions of subsequent sections 5, 6, and 7.[1] Sections 4, 5, 6, and 7, when construed together, clearly indicate that it was not the legislative intent to compel the owner of a factory or workshop to pay $10 for a certificate he does not want, the same being issued as the result of an examination which neither he nor any of his employees requested. The object of these sections was to afford both employer and employee an opportunity whereby an official and authoritative deter-

[1]Note: Section 5 of the factory act, Laws 1905, p. 165, provides that any person operating a factory "shall have a right to make written request" to the commissioner of labor to inspect the factory and to issue his certificate of approval. By section 6, a like examination is provided for upon complaint by an employee that the employer fails to remedy a defect after notice thereof. Section 7 provides that whenever, on any examination of any factory, it is found to conform to the regulations of the statute, the commissioner of labor shall issue a certificate to that effect, which shall be *prima facie* evidence of compliance with the statute, but before any certificate shall be issued, the person operating the factory shall pay to the state treasurer an annual fee of $10, and that a copy of the certificate shall be posted in a conspicuous place. Rep.

mination might be had on the question of whether the employer had furnished adequate safeguards and protection for the employee, and this for the benefit and protection of each upon the application of either. It was not intended to subject every owner and operator to a criminal prosecution and the imposition of a fine, should he refuse to pay the $10 and procure a certificate whenever his workshop might, upon the initiative of the commissioner of labor, be examined without the request of either himself or any of his employees.

Much light may be thrown upon the question here involved by comparing §§ 8 and 11. The former reads as follows:

"Any person . . . who violates or omits to comply with any of the foregoing requirements or provisions of this act, and such violation or omission shall be the proximate cause of any injury to any employee, shall be liable in damages to any employee who sustains injuries by reason thereof: . . ."

If, as in this case, a factory or workshop has been properly safeguarded, it certainly would not be seriously contended that an omission to pay the fee or to secure and post the certificate could be the proximate cause of injury to an employee, and the liability to damages imposed by this section has no reference to any such omission. Necessarily the first portion of § 8 refers to a violation of the act by failing to properly safeguard. In § 11 substantially the same language is used. It reads as follows:

"Any person . . . who violates or fails to comply with any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine . . ."

We think that in addition to the liability to damages imposed by § 8, this section imposes the further penalty of a fine for failure to properly safeguard, or to comply with the affirmative requirements of §§ 1, 2, and 3, and that it has no reference whatever to the optional features of §§ 4, 5, 6, and 7. Criminal statutes are not to be extended by con-

struction, and if the legislature desires to compel the performance of certain acts under the pain of criminal penalties for their nonperformance, such intention must be so clearly expressed as to enable the citizen of ordinary intelligence to determine with reasonable certainty whether his acts will place him in jeopardy.

The judgment is affirmed.

HADLEY, C. J., ROOT, MOUNT, and DUNBAR, JJ., concur.

